IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MOUSHIMI KABIR,

                **Plaintiff,**

      **v.**

STATEBRIDGE COMPANY, LLC,
and BANK OF NEW YORK
MELLON TRUST COMPANY,
NATIONAL ASSOCIATION, AS
GRANTOR TRUSTEE OF
PROTIUM MASTOR TRUST,

             **Defendants.**

**1:11-cv-2747-WSD**

<u>**OPINION AND ORDER**</u>

This matter is before the Court on Statebridge Company, LLC

("Statebridge") and Bank of New York Mellon Trust Company, National

Association, as Grantor Trustee of Protium Mastor Trust's ("Mellon")

(collectively, "Defendants") Motion to Dismiss [4].

**I.    BACKGROUND**

On October 31, 2007, Moushimi Kabir ("Plaintiff") delivered a Security

Deed for 3131 Wild Oats Court, Marietta, Cobb County, Georgia, (the "Wild Oats

Court Property") to Mortgage Electronic Registration Systems, Inc., ("MERS") a

nominee for EquiFirst Corporation, to secure the payment of a Note in the amount

of $157,050.00.[1]  (Compl. ¶ 7; Ex. A to Mot. to Dismiss.)  On February 4, 2011, the Security Deed was assigned to Mellon and subsequently recorded in Deed Book 14835, Page 4893, Cobb County, Georgia.  (Ex. I to Compl.; Ex. A to Mot. to Dismiss.)

In May 2010, Plaintiff defaulted on the Note.  (Ex. H to Compl.; Ex. B to Mot. to Dismiss.)  On July 6, 2010, Plaintiff was notified by her loan servicing agent, HomEq, that she was in default.  (Ex. B to Mot. to Dismiss.)

---

[1] In deciding a motion to dismiss, "a court limits its consideration to the pleadings and exhibits attached thereto."  Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citations omitted).  If matters outside the pleadings are presented for consideration, a court generally must exclude the document or else convert the motion to one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(c).  A document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed.  Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (explaining that "'[u]ndisputed' in this context means that the authenticity of the document is not challenged"); Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and these documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.").  The foreclosure deed, notice of intent to foreclose, advertisement of sale, and notice of foreclosure sale attached to Defendants' Motion to Dismiss are central to Plaintiff's claims and she refers to them several times in her Complaint  (Compl. ¶¶ 9-10, 13, 18-20, 22, 26, 28-32, 36-38, 41, 43, 48, 50, 54, 76-78, 81.)  In her Response to Defendants' Motion to Dismiss, Plaintiff challenges the validity of the Security Deed and foreclosure deed, but does not dispute the authenticity of any of the documents attached to the Motion to Dismiss.  The documents are incorporated by reference into the Complaint and will be considered in connection with Defendants' Motion to Dismiss.

In early July 2010, Plaintiff contacted HomEq in an attempt to modify the adjustable interest rate on the Note.  (Compl. ¶ 9; Ex. A to Compl.)  A representative of HomEq "indicated that HomEq would not consider a loan modification to anyone who was current on their mortgage obligation regardless of the interest rate or the terms of the agreement."  (Compl. ¶ 10.)

On July 9, 2010, Mellon entered into a Servicing Agreement where Statebridge would act as its attorney-in-fact to service certain mortgage loans, to include Plaintiff's loan.  (Ex. A to Mot. to Dismiss.)  Statebridge was provided a limited power of attorney by Mellon serve as servicing agent.  (Id.)

On July 15, 2010, HomEq sent Plaintiff a letter acknowledging her request for a modification of her interest rate under the Home Affordable Modification Program.  (Ex. B to Compl.)  HomEq indicated that it would take thirty to forty-five days to obtain the additional information necessary to evaluate the request and that her home "will not: (i) be referred to foreclosure; or (ii) be sold at a foreclosure sale" while the HAMP modification request was evaluated.  (Id.)

During the time period that HomEq needed to evaluate the modification request, Plaintiff was notified that Statebridge was assigned to be the new servicer of her loan.  (Compl. ¶ 13.)  Plaintiff asked Statebridge about the status of her HAMP modification request that was submitted to HomEq and was told it had no

record of it.  (Id.)  Plaintiff was asked by Statebridge to resubmit her HAMP modification request information and did so.  (Compl. ¶ 13; Ex. E to Compl.)

On August 21, 2010, Statebridge began servicing Plaintiff's mortgage.  (Ex. C to Compl.)  On October 11, 2010, Plaintiff was notified that, in accordance with the terms of the Note, her interest rate would increase.  (Compl. ¶ 14; Ex. D to Compl.)

Although Plaintiff never heard back from HomEq regarding her HAMP modification request, her loan servicer, Statebridge, notified her by letter on December 15, 2010, (the "December 15th letter") that her HAMP loan modification request was denied.  (Compl. ¶ 12, 15; Ex. E to Compl.)  The denial was in written form and stated the reason for denial was that she did not meet the guidelines for a modification and her financial information did not meet the lender's modification criteria.  (Ex. E to Compl.)

On December 28, 2010, after the HAMP modification request was denied, Mellon, through counsel, notified Plaintiff by letter (the "December 28th letter") of its intent to collect the entire amount due on the Note secured by the Wild Oats Court Property.  (Ex. F to Compl.)

In January 2011, Plaintiff sought assistance from her congressman's office to determine how much she would need to pay to reinstate her loan.  (Ex. H to

4

Compl.)  In response to her congressional inquiry, Statebridge sent a letter to Plaintiff with the desired information.  (Id.)  As of January 24, 2011, Plaintiff was nine months delinquent in her mortgage and needed to pay $21,938.31 to reinstate her loan.  (Id.)

On February 22, 2011, Mellon notified Plaintiff by certified mail (the "February 22nd letter") that she was in default on the Note and made a formal demand for immediate payment of the total amount of indebtedness.  (Ex. G to Compl.)   The February 22nd letter notified Plaintiff that a foreclosure sale would be held on April 5, 2011, before the courthouse door of Cobb County, Georgia. (Id.)  The February 22nd letter included a copy of the "Notice of Sale Under Power" that was sent to the Marietta Daily Journal for publication as required by law.  (Id.)

On April 5, 2011, Mellon foreclosed on the property under the Security Deed.  (Ex. A to Mot. to Dismiss.)

On May 3, 2011, Plaintiff, through counsel, filed her Complaint in the Superior Court of Fulton County seeking damages and injunctive relief.  Plaintiff asserted the following claims: (1) wrongful foreclosure; (2) fraud; (3) breach of contract; (4) theft by deception; (5) breach of duty of good faith and fair dealing; (6) violations of the Making Home Affordable Program; (7) unjust enrichment; (8)

negligence; (9) promissory estoppel; and (10) violations of the Fair Debt

Collection Practices Act.  Plaintiff seeks damages, punitive damages, an

emergency temporary restraining order, and injunctive relief.

On July 22, 2011, Plaintiff's counsel withdrew from representation of her in

this matter with the approval of the Fulton County court.  On August 17, 2011,

Defendants removed the action to this Court on the basis of diversity of citizenship

and federal question grounds.  On August 24, 2011, Defendants filed their Motion

to Dismiss.  On September 21, 2011, Plaintiff, proceeding *pro se*, filed an untimely

response to the Motion to Dismiss.[2]

## II.   DISCUSSION

### A.   Standard on Motion to Dismiss

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-

settled.  Dismissal of a complaint is appropriate "when, on the basis of a

dispositive issue of law, no construction of the factual allegations will support the

---

[2] Although untimely filed, the Court will consider this pleading to the extent that it
constitutes a response.  See Foman v. Davis, 371 U.S. 178, 181-182 (1962)
(quoting Conley v. Gibson, 355 U.S. 41, 48 (1957) and citing Fed. R. Civ. P. 1)
("It is too late in the day and entirely contrary to the spirit of the Federal Rules of
Civil Procedure for decisions on the merits to be avoided on the basis of such mere
technicalities. `The Federal Rules reject the approach that pleading is a game of
skill in which one misstep by counsel may be decisive to the outcome and accept
the principle that the purpose of pleading is to facilitate a proper decision on the
merits.' The Rules themselves provide that they are to be construed `to secure the
just, speedy, and inexpensive determination of every action.'").

cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992

F.2d 1171, 1174 (11th Cir. 1993).  In considering a motion to dismiss, the Court

accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69,

73 (1984), and considers the allegations in the complaint in the light most

favorable to the plaintiff.  Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir.

2007).  Ultimately, the complaint is required to contain "enough facts to state a

claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct.

1955, 1974 (2007).[3]

To state a claim to relief that is plausible, the plaintiff must plead factual

content that "allows the Court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009).  "Plausibility" requires more than a "sheer possibility that a defendant has

acted unlawfully," and a complaint that alleges facts that are "merely consistent

with" liability "stops short of the line between possibility and plausibility of

'entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557).  "To survive a

---

[3] The Supreme Court explicitly rejected its earlier formulation for the Rule
12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not
be dismissed for failure to state a claim unless it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim which would entitle him
to relief.'" Twombly, 127 S. Ct. at 1968 (quoting Conley v. Gibson, 355 U.S. 41,
45-46 (1957)).  The Court decided that "this famous observation has earned its
retirement." Id. at 1969.

motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).[4]

     B.    Defendants' Motion to Dismiss

          1.    *Wrongful Foreclosure and improper assignment*

In Georgia, a plaintiff asserting a claim for wrongful foreclosure must establish a legal duty owed to plaintiff by the foreclosing party, a breach of that duty, a causal connection between the breach and the injury sustained, and damages.  All Fleet Refinishing, Inc. v. West Georgia Nat. Bank, 634 S.E.2d 802, 807 (Ga. Ct. App. 2006).  "A claim for wrongful exercise of a power of sale under O.C.G.A. § 23-2-114 can arise when the creditor has no legal right to foreclose." DeGoyler v. Green Tree Serv., LLC, 662 S.E.2d 141, 147 (Ga. Ct. App. 2008).

---

[4] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Twombly, 127 S. Ct. at 1965.

The notice requirements for a non-judicial foreclosure are set out in O.C.G.A. § 44-14-162 (requiring same advertising standards as sheriff's sales, which are specified at § 9-13-140) and § 44-14-162.2 (requiring notice to debtor). Section 44-14-162.2 provides:

> (a) Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor. The notice required by this Code section shall be deemed given on the official postmark day or day on which it is received for delivery by a commercial delivery firm. Nothing in this subsection shall be construed to require a secured creditor to negotiate, amend, or modify the terms of a mortgage instrument.
>
> (b) The notice required by subsection (a) of this Code section shall be given by mailing or delivering to the debtor a copy of the notice of sale to be submitted to the publisher.

Plaintiff alleges that the attempted foreclosure is unlawful because the notice provided by Defendants in the February 22nd letter failed to meet the statutory requirements.  (Compl. ¶¶ 28-32.)  Plaintiff further alleges that the notice was defective for failing to come from the actual holder of the Note or Security Deed and failing to provide information on "any transfer or assignment" to anyone other

than the original holder.  (Id. ¶¶ 28-29, 32.)  Plaintiff alleges that foreclosure cannot occur "as MERS was never a 'holder' of the Note as required" by Georgia law and the Note was improperly assigned, which calls into question Mellon's power to foreclose by sale.  (Id. ¶ 33.)

The February 22nd letter meets all the statutory notice requirements.  It was sent more than thirty days before the date of proposed foreclosure, April 5, 2011.  (Ex. G to Compl.; Ex. D to Mot. to Dismiss.)  It was in writing and included all of Statebridge's information as the authority who could negotiate, amend, and modify all terms of the mortgage.  (Id.)  It included a copy of the Notice of Sale that was submitted to and published in the Marietta Daily Journal.  (Id.)  It was sent by certified mail to the Wild Oats Court Property.  (Id.)

Additionally, nothing in the statutory notice provisions requires notice to come from the actual holder of the Note or Security Deed, or requires disclosure of information regarding any transfer or assignment of the Note or Security Deed to anyone other than the original holder.  Assuming that there is such a requirement, the February 22nd letter meets that notice requirement since as of February 4, 2011, Mellon was the holder of the security interest and it sent the February 22nd letter through counsel.

Plaintiff's claim that foreclosure is improper because MERS was never the "holder" of the Note and had nothing to transfer to Mellon also fails as a matter of law. MERS was granted the original interest in the Security Deed. (Ex. A to Compl.) A security deed, as Plaintiff correctly points out in her Response to Defendants' Motion to Dismiss, requires adherence to O.C.G.A. §§ 44-14-33 and 44-14-61 to be recorded. U.S. Bank Nat'l Ass'n v. Gordon, 709 S.E.2d 258, 261 (Ga. 2011) ("to admit a security deed to record, the deed must be attested by or acknowledged before an officer, such as a notary public, and, in the case of real property, by a second witness"). In this case, and contrary to Plaintiff's assertion, the Security Deed is proper as a matter of law since, from the face of the document, it was attested to by a notary public and an additional witness and duly recorded. (Ex. A to Compl.)

On February 4, 2011, MERS assigned to Mellon:

"that certain Security Deed or Deed to Secure Debt executed by Moushimi Kabir to Mortgage Electronic Registration Systems, Inc. as nominee for EquiFirst Corporation, its successors and assigns and dated October 31, 2007, recorded in Deed Book 14552, Page 1782 . . . together with the real property therein described, which has the property address of 3131 Wild Oats Court; and also the indebtedness described in said Deed and secured thereby, having this day been transferred and assigned to said Assignee together with all of Assignor's right, title and interest in and to the said Deed, the property therein described and the indebtedness secured; and the said Assignee is herby subrogated to all the rights, powers, privileges and securities

vested in Assignor under and by virtue of the aforesaid Security Deed
or Deed to Secure Debt.

(Ex. I to Compl.)

On February 16, 2011, the assignment was filed and recorded by the Clerk
of the Cobb County Superior Court.  (Id.)  Like the Security Deed, and contrary to
Plaintiff's assertion that the assignment "did not satisfy the attestation formalities
prescribed" by Georgia law, the assignment was attested to by a notary public and
an additional witness.  (Id.)  The assignment was not invalid or deficient for failure
to comply with O.C.G.A. §§ 44-5-33 and 44-14-64.[5]

The assignment makes clear that Mellon was validly assigned and held the
Security Deed, and the right to foreclose associated with it.  Plaintiff's legal
conclusion that "there are no legal Assignments on record, MERS as Trustee could
not legally foreclose upon Plaintiff's property" is unsupported by the record she
submitted with her Complaint and wrong as a matter of law.  Mellon validly held a
legal interest in the Security Deed and had the authority to sell the property.

---

[5] The Court notes that Plaintiff's Response to Defendants' Motion to Dismiss cited
the wrong O.C.G.A. section, § 44-5-64, in claiming that the assignment was
deficient.  The correction section is § 44-14-64, which governs transfers of deeds
to secure debt.

The Court notes that loan documents for similar mortgage transactions typically convey such authority to transfer to MERS,[6] and Plaintiff, based on her own exhibits, cannot prove that MERS did not hold the Note or that MERS lacked authority for the assignment of the Security Deed.

To the extent that Plaintiff asserts in her Complaint and Response to Defendants' Motion to Dismiss that a foreclosure cannot occur because MERS did not hold the Note or that the separation of the Note and Security Deed renders the Security Deed invalid, variations of this argument have been repeatedly rejected by the Court, and the Court is unaware of any Georgia statute or decision interpreting

---

[6] In 2003, the Georgia Supreme Court noted that "MERS currently has over 15 million loans registered, and is registering over 40% of all mortgage loans originating in the United States." Taylor, Bean & Whitaker Mortg. Corp. v. Brown, 583 S.E.2d 844, 849 n.1 (Ga. 2003).  The role MERS plays in mortgage transactions is complicated, but the Georgia Supreme Court has explained that MERS:

> "is a private company created by the mortgage banking industry for the purpose of establishing a centralized, electronic system for registering the assignments and sales of residential mortgages, with the goal being the elimination of costly paper work every time a mortgage loan is sold. Under the MERS system, the borrower and the original lender name MERS as the grantee of any instrument designed to secure the mortgage loan. The security instrument is then recorded in the local land records, and the original lender registers the original loan on MERS's electronic system. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system."

Id.

Georgia law that precludes the holder of the security deed from proceeding with a foreclosure sale simply because it does not also possess the promissory note.  See, e.g., Brown v. Fed. Nat'l. Mortg. Ass'n, No. 1:10-CV-03289, 2011 WL 1134716, at *5-*6 (N.D. Ga. Feb. 28, 2011); LaCosta v. McCalla Raymer, LLC, No. 1:10-CV-1171, 2011 WL 166902, at *5 (N.D. Ga. Jan. 18, 2011) (stating that the court "does not read Sammons to require that an entity or individual in possession of the security deed, must also possess the note before bringing a foreclosure action"); Nicholson v. OneWest Bank, No. 1:10-CV-0795, 2010 WL 2732325, at *4 (N.D. Ga. Apr. 20, 2010) ("[T]he nominee of the lender has the ability to foreclose on a debtor's property even if such nominee does not have a beneficial interest in the note secured by the mortgage."); cf. Greer v. O'Dell, 305 F.3d 1297, 1302 (11th Cir. 2002) (loan servicer has standing to conduct legal affairs of investors relating to debt it services); In re Dewberry, No. 10-60155-WLH, 2010 WL 4882016, at *2 (Bankr. N.D. Ga. Oct. 21, 2010) (creditor has standing to assert claim based on security deed assigned by MERS because assignment of security deed also transfers debt secured by it).

Georgia courts have also consistently held that a security deed should be construed in favor of allowing exercise of the power of sale.  Kennedy v. Gwinnett Commercial Bank, 270 S.E. 2d 867, 870 (Ga. Ct. App. 1980) ("It is clear that a

14

security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies."). Mellon was entitled to foreclose on April 5, 2011, because it held the power of sale conveyed by Plaintiff under the Security Deed. Plaintiff's exhibits to her Complaint demonstrate that she conveyed the power of sale to MERS, and, by a valid assignment under Georgia law, the power of sale was conveyed to Mellon.[7]

Plaintiff's allegation that Defendants failed to give proper notice of foreclosure or lacked the authority to foreclose fails to state a claim upon which relief may be granted and is required to be dismissed.

### 2. *Fraud*

To the extent that Plaintiff asserts Defendants committed fraud, Plaintiff's conclusory allegations are insufficient to satisfy the special pleading requirement under Rule 9(b) of the Federal Rules of Civil Procedure for pleading fraud claims

---

[7] To the extent there is any issue regarding separation of the Note from the Security Deed, the defect was cured by the first assignment. O.C.G.A. § 44-14-64 provides:

> Transfers of deeds to secure debt may be endorsed upon the original deed or by a separate instrument identifying the transfer and shall be sufficient to transfer the property therein described and the indebtedness therein secured, whether the indebtedness is evidenced by a note or other instrument or is an indebtedness which arises out of the terms or operation of the deed, together with the powers granted without specific mention thereof.

O.C.G.A. § 44-14-64(b).

with specificity and otherwise fails to allege the required elements of a claim of fraud.  See Fed. R. Civ. P. 9(b).

In Georgia, plaintiffs alleging fraud must establish five (5) elements: "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." Baxter v. Fairfield Fin. Servs., 704 S.E.2d 423, 429 (Ga. Ct. App. 2010) (citation omitted).

Rule 9(b) of the Federal Rules of Civil Procedure further requires plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  The Eleventh Circuit has consistently held:

> To comply with Rule 9(b), a complaint must set forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Thomas v. Pentagon Federal Credit Union, 393 Fed. App'x 635, 638 (11th Cir. 2010) (mortgagor failed to allege facts with sufficient particularity to state fraud claim against mortgagee where he did not identify any specific statements made by mortgagee and failed to identify time and place of an omission, person responsible

for making an omission, and what mortgagee obtained as a consequence of fraud); see also Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008).

In her Complaint and Response to Defendants' Motion to Dismiss, Plaintiff claims fraud occurred in misrepresentations made regarding whether foreclosure or modification would occur and that in Defendants' filing of "fraudulent documents to aid themselves in gaining an interest in or in the whole of Plaintiff's property, by forgery, fraud and general illegal means." Plaintiff has not pled the five elements of fraud with the specificity required under either Georgia law or Rule 9 of the Federal Rules of Civil Procedure.[8] Plaintiff's allegation that Defendants committed fraud fails to state a claim upon which relief may be granted and is required to be dismissed.

### 3. *Breach of contract*

Under Georgia law: "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can

---

[8] The Court further finds that, construing the facts in the light most favorable to Plaintiff and based on Plaintiff's own exhibits, Defendants complied with their representation that foreclosure proceedings would not initiate until a determination on the HAMP modification occurred. A decision on the HAMP modification request was made in the December 15th letter. It was only after that decision was made that the December 28th letter was sent notifying Plaintiff that foreclosure proceedings were being initiated.

operate." O.C.G.A. § 13-3-1.  An action for breach of contract requires breach of a valid contract and resultant damages to the party who has the right to complain about the breach.  Budget Rent-A-Car of Atlanta, Inc. v. Webb, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996).

Oral and unwritten agreements regarding interests in lands; to include reinstating a mortgage, refinancing a mortgage, or forbearing from foreclosure proceedings; are unenforceable under the Georgia Statute of Frauds.  O.C.G.A. § 13-5-30; James v. Safari Enters., Inc., 537 S.E.2d 103, 104 (Ga. Ct. App. 2000); Allen v. Tucker Fed. Bank, 510 S.E.2d 546, 546-47 (Ga. Ct. App. 1998).  Promises to forbear from collecting on a debt also require new consideration from the debtor.  All Fleet Refinishing, 634 S.E.2d at 809 (performance of an act one is already legally bound to do is not sufficient consideration for the promise of another).

Under Georgia contract law, "[t]he essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom."  TDS Healthcare Sys. Corp. v. Humana Hosp. Illinois, Inc., 880 F. Supp. 1572, 1583 (N.D. Ga. 1995).  A plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss.  American Casual Dining, L.P. v. Moe's Southwest

Grill, L.L.C., 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) ("Because [plaintiff] cannot point to any contractual provision that [defendant] breached . . . [plaintiff] cannot state a claim for breach of contract based on these allegations.") (citing Adkins v. Cagle Foods JV, LLC, 441 F.3d 1320, 1327 (11th Cir. 2005)).

Plaintiff alleges Defendants' failure to notify her of the intent to foreclose breached the mortgage agreement and that by continuing with foreclosure proceedings, Defendants breached a "novation, the modified mortgage agreement." (Compl. ¶¶ 54-55.)

The allegations in the Complaint do not provide any factual basis that Plaintiff's mortgage was modified or that Plaintiff entered into a new mortgage with any Defendant or other person.  The assertion that a novation or modification exists is not supported by the record in this case.  (Compl. ¶¶ 1-26, 44-47; Ex. H to Compl. at 1.)  There is simply no factual support for Plaintiff's conclusory novation allegation.[9]  Plaintiff has failed to state a claim for breach of contract and this claim is required to be dismissed.

---

[9] Even if there was some unwritten, oral agreement to modify the Note or Security Deed, that agreement is unenforceable as a matter of law under the Georgia Statute of Frauds.  O.C.G.A. § 13-5-30; James, 537 S.E.2d at 104; Allen, 510 S.E.2d at 546-47.

####   4.      *Theft by deception*

Plaintiff's theft by deception claim is based on a criminal statute.  O.C.G.A. § 16-8-3.  O.C.G.A. § 16-8-3 does not provide for a civil remedy and a civil remedy cannot be implied to arise from a violation of that criminal statute.  <u>See Anthony v. Am. Gen. Fin. Servs., Inc.</u>, 697 S.E.2d 166, 171-72 (Ga. 2010).  Plaintiff cannot allege a civil claim for theft by deception and this claim is required to be dismissed.

####   5.      *Breach of duty of good faith and fair dealing*

Plaintiff conclusorily alleges claims for a breach of good faith and fair dealing.  Plaintiff generally alleges, without any factual support, that over the course of the mortgage, she was injured as a result of a breach of the duty of good faith and fair dealing by Defendants.  To support this conclusory claim, Plaintiff "incorporates by specific reference thereto and repleads and realleges in relevant part" all the preceding paragraphs of the Complaint.  (Compl. ¶ 60.)

This is insufficient factual content to allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 129 S. Ct. at 1949.  "[P]laintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  <u>Jackson</u>, 372 F.3d at 1263.

20

Plaintiff has failed to state a claim for breach of any duty of good faith and fair dealing and this claim is required to be dismissed.[10]

### 6.  *The Making Home Affordable Program*

Plaintiff appears to seek to assert a claim under the Home Affordable Modification Program ("HAMP") by simply realleging the preceding paragraphs in the Complaint and chronicling the history of various economic recovery acts and provisions that have been signed into law.  (Compl.   ¶¶ 64-72.)  The Complaint

---

[10] Plaintiff attempts to raise a new claim in her Response to Defendants' Motion to Dismiss that "defendants were in violation of fair faith in good dealing when they auctioned Plaintiff's property at much less than it should have gone for, and that they themselves bought it, therefore purposeful that they did not try to get the best possible price for the property."  (Pl.'s Resp. to Defs.' Mot. to Dismiss ¶ 55.)  While the Court has considered the untimely Response to Defendants' Motion to Dismiss in deciding this motion, it is not required to consider this allegation as a new claim since Plaintiff never sought or requested to amend the Complaint.  Even if this were construed as a new claim, Plaintiff's conclusory allegations regarding a breach of good faith and fair dealing in the conduct of the foreclosure sale do not state a claim for relief.  All Plaintiff alleges is that in the foreclosure sale, the home sold for much less than it should have and offers no support for this assertion beyond her one sentence, conclusory allegation.  This is insufficient factual content to allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  Even if the Court were to allow amendment of the Complaint and liberally construe this as a new claim, Plaintiff has failed to state a claim for breach of any duty of good faith and fair dealing in the foreclosure sale.

does not allege facts to support a claim under HAMP and this claim is required to be dismissed.[11]

> 7.    *Unjust enrichment*

A claim of unjust enrichment under Georgia law may only arise in circumstances where there is not a contract and a party has received a benefit from another party for which it ought to return the benefit or pay compensation for it. Engram v. Engram, 463 S.E.2d 12, 15 (Ga. 1995) ("Unjust enrichment applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for.") (citations and punctuation omitted); see also Tuvim v. United Jewish Comms., Inc., 680 S.E.2d 827, 829-30 (Ga. 2009).  Where security deeds are valid and controlling in foreclosure actions, a party being foreclosed upon may not seek relief based on an unjust enrichment claim.  See Arko v. Cirou, 700 S.E.2d 604, 608-09 (Ga. Ct. App. 2010); Donchi, Inc. v. Robdol, LLC, 640 S.E.2d 719, 724 (Ga. Ct. App. 2007).

---

[11] The Court notes that other federal courts have found that HAMP, and the Emergency Economic Stabilization Act of 2008, neither expressly, nor impliedly, creates a cause of action or vests "mortgagors with third party beneficiary rights to enforce HAMP" agreements under Georgia law.  See Warren v. Bank of Am., No. 4:11-cv-70, 2011 WL 2116407, at *2-*5 (S.D. Ga. May 24, 2011) (citing Zoher v. Chase Home Fin., 2010 WL 4064798, at *2 (S.D. Fla. Oct. 15, 2010); Marks v. Bank of Am., N.A., 2010 WL 2572988, at *5 (D. Ariz. June 22, 2010); Villa v. Wells Fargo  Bank, N.A., 2010 WL 935680, at *2-*3 (S.D. Cal. Mar. 15, 2010)).

This is not a circumstance where there is an absence of a contract between the parties.  This is a foreclosure action involving a valid security deed.  Plaintiff has not alleged facts to support an unjust enrichment claim and this claim is required to be dismissed.

>    8.   *Negligence*

Plaintiff's next claim arises under the Georgia Residential Mortgage Act (the "GRMA"), O.C.G.A. §§ 7-1-1000 to -1021.  The GRMA prohibits those in the mortgage business from "[e]ngag[ing] in any transaction, practice, or course of business which is not in good faith or fair dealing, or which operates a fraud upon any person, in connection with the attempted or actual making of, purchase of, transfer of, or sale of any mortgage loan."

Here, Plaintiff conclusorily alleges that in the servicing[12] of the mortgage, she was injured as a result of a breach of the duty of good faith and fair dealing required under the GRMA by Defendants.  Plaintiff's only supporting allegations

---

[12] To the extent that Plaintiff alleges harm under the GRMA from the foreclosure sale itself, Georgia courts have held that the GRMA does not apply to foreclosure sales.  Geary v. Wilshire Credit Corp., 673 S.E.2d 15, 18 & n.8 (Ga. Ct. App. 2009); Roylston v. Bank of America, N.A., 660 S.E.2d 412, 416 (Ga. Ct. App. 2008) ("In a foreclosure sale, title to the property is sold and transferred to the highest bidder, but the security interest itself is not sold or transferred; instead, it is extinguished altogether upon satisfaction of the debt from the sale proceeds.").

are those she "incorporates by specific reference thereto and repleads and realleges in relevant part" all the preceding paragraphs of the Complaint.  (Compl. ¶ 85.)

Plaintiff again has not alleged facts to support a claim based on negligence. Iqbal, 129 S. Ct. at 1949.  "[P]laintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  Jackson, 372 F.3d at 1263. Plaintiff has failed to state a claim for breach of any duty of good faith and fair dealing required under the GRMA and her negligence claim is required to be dismissed.[13]

### 9.    *Promissory estoppel*

In Georgia, a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  O.C.G.A. § 13-3-44.  This requires plaintiffs to demonstrate a "substantial change of position to their detriment in reliance upon

---

[13] Courts within this district have also found that a private cause of action does not arise under the GRMA, which does not explicitly create a private action and which contains a robust public enforcement scheme.  See Jordan v. PHH Mortg. Corp., No. 1:10-cv-967, 2010 WL 5058638, at *7-8 (N.D. Ga. Nov. 5, 2010), adopted by 2010 WL 5055809 (N.D. Ga. Dec. 6, 2010); Reese v. Wachovia Bank, N.A., No. 1:08-cv-3461-GET, 2009 U.S. Dist. LEXIS 94802, at *5-*8 (N.D. Ga. Feb. 23, 2009).

the promise in issue." Balmer v. Elan Corp., 583 S.E.2d 131, 133 (Ga. Ct. App. 2003). "Promissory estoppel does not apply to a promise that is vague, indefinite, or of uncertain duration." Mariner Healthcare, Inc. v. Foster, 634 S.E.2d 162, 168 (Ga. Ct. App. 2006). A claim for promissory estoppel may not be based on a plaintiff's "own preconceived intent or knowledge." Reindel v. Mobile Content Network Co., 652 F. Supp. 2d 1278, 1290 (N.D. Ga. 2009).

Plaintiff's conclusory, fact-deficient promissory estoppel allegations do not state a plausible claim for relief. Plaintiff simply alleges that Defendants "had a duty to evaluate Plaintiff for the HAMP program before conducting a foreclosure sale" and she suffered some unspecified harm. Consistent with her pleading practice, she "incorporates by specific reference thereto and repleads and realleges in relevant part" all the preceding paragraphs of the Complaint to support her claim. (Compl. ¶ 91.)

There are no allegations that her position is any different than it was before applying for a HAMP modification, that she has not "fore[gone] a valuable legal right to her detriment," Pepsi Cola Bottling Co. of Dothan v. First Nat. Bank of Columbus, 281 S.E.2d 579, 581 (Ga. 1981), or that she made "a substantial change of position" as a result of any alleged promise, Clark v. Byrd, 564 S.E.2d 742, 745 (Ga. Ct. App. 2002).

The Complaint contains insufficient factual content to allow "the Court to draw the reasonable inference that the defendant is liable for" a claim for damages based on promissory estoppel arising from her HAMP modification application. Iqbal, 129 S. Ct. at 1949.  Plaintiff has failed to state a claim of promissory estoppel and this claim is required to be dismissed.

####          10.     *Violation of Fair Debt Collection Practices Act by Mellon*

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") "applies only to debt collectors and not to creditors or mortgage servicers." Humphrey v. Wash. Mut. Bank, F.A., No. 1:06-CV-1367-JOF, 2007 U.S. Dist. LEXIS 40279, at *4 (N.D. Ga. June 1, 2007); see 15 U.S.C. § 1692a(6); see also Nwoke v. Countrywide Home Loans, Inc., 251 F. App'x 363, 364-65 (7th Cir. 2007); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985), modified on other grounds, 761 F.2d 237 (5th Cir. 1985); Winstead v. EMC Mortg. Corp., 697 F. Supp. 2d 1, 4 (D.D.C. 2010); Burns v. Bank of America, 655 F. Supp. 2d 240, 254-55 (S.D.N.Y. 2008), aff'd 360 F. App'x 255 (2d Cir. 2010); Diessner v. Mortg. Elec. Registration Sys., 618 F. Supp. 2d 1184, 1187-89 (D. Ariz. 2009), aff'd 384 F. App'x 609 (9th Cir. 2010); Somin v. Total Cmty. Mgmt. Corp., 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007).

Under the FDCPA, foreclosing on a mortgage is not debt collection activity, and only Section 1692f(6) of the FDCPA applies.  See Warren v. Countrywide Home Loans, Inc., 342 F. App'x 458, 460-61 (11th Cir. 2009) ("reasonable to conclude that enforcement of a security interest through the foreclosure process is not debt collection for purposes of the [FDCPA]"); Montgomery v. Huntington Bank, 346 F.3d 693, 699 (6th Cir. 2003) ("[T]he federal courts are in agreement: A bank that is a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.") (internal quotation marks omitted); Aubert v. Am. Gen. Fin., Inc., 137 F.3d 976, 978 (7th Cir. 1998) ("Creditors who collect in their own name and whose principal business is not debt collection, therefore, are not subject to the [FDCPA].").  The purpose of the FDCPA is to curb abusive collection practices, not to federalize disputes about the validity of the underlying debt.  Section 1692f(6) only applies to situations where a debt collector attempts to collect an amount that is not authorized by the security agreement, and it is not implicated where the security deed authorizes a foreclosure sale.[14]  See Transamerica Fin. Servs., Inc. v. Sykes, 171 F.3d 553, 555-

---

[14] The exception for section 1692f(6) prohibits taking or threatening to take nonjudicial action if: (1) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (2) there is no present intention to take the property; or (3) the property is exempt by law.  This section is inapplicable because there is a clear present right to possession as

56 (7th Cir. 1999) (attempt to enforce fraudulent mortgage does not trigger FDCPA Section 1692f, because "[t]his particular provision of the FDCPA addresses the conduct of the debt collector, not the validity of the underlying debt").

To state a plausible claim under the FDCPA, Plaintiff must show that Mellon is a debt collector.[15]  Plaintiff has not alleged that Mellon is a debt collector and the Court finds that Mellon did not engage in debt collection and section 1692f does not apply.  Plaintiff has failed to state a claim for a violation of the FDCPA and this claim is required to be dismissed.

       11.    *Emergency Temporary Restraining Order and injunctive relief*

Plaintiff seeks an injunction to prohibit Defendants "from foreclosing, executing a Writ of Possession, evicting Plaintiff, or transferring property to a third party prior to the time Plaintiff's challenges to the legality and validity of the purported foreclosure sale can be determined."[16]  (Compl. ¶ 74.)

_____

evidenced by the Security Deed; an intention to take the property as evidenced by the February 22nd letter; and there is no allegation that the property is exempt by law.

[15] While McCurdy & Candler may have qualified as a debt collector, it is not named as a defendant in this action and Plaintiff only alleges Mellon violated the FDCPA.

[16] The Court notes that the property was already sold at foreclosure on April 5, 2011, and Plaintiff may already have been evicted based on the information contained in Defendants' Motion to Dismiss.  (Mot. to Dismiss at 2.)

To obtain a preliminary injunction, the movant must establish: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.  Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005).  "[A] preliminary injunction is an extraordinary remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites."  Redford v. Gwinnett Cnty. Judicial Circuit, 350 F. App'x 341, 345 (11th Cir. 2009) (citations omitted).

Plaintiff has not met any of the four requirements for obtaining injunctive relief.  Plaintiff has not shown a substantial likelihood of success on the merits because she has failed to allege any claim in this action upon which relief can be granted.  Plaintiff's request for injunctive relief is required to be denied.

### 12.   Punitive damages

The Complaint additionally alleges that Plaintiff is entitled to an award of punitive damages.[17]  "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire

---

[17] The Court notes that the Complaint improperly references Georgia's civil Racketeer Influenced and Corrupt Organizations statute.

want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "Punitive damages cannot be awarded in the absence of any finding of compensatory damages." <u>Martin v. Martin</u>, 600 S.E.2d 682, 683 (Ga. Ct. App. 2004). Because Plaintiff has failed to state any claims upon which relief may be granted, Plaintiff cannot succeed on her claim for punitive damages, and that claim must be dismissed.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [4] is **GRANTED**.

**SO ORDERED** this 27th day of September, 2011.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE